Eastern District of Kentucky
F I L E D

JAN 1 1 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-566-GWU

WILLIAM L. ELDRIDGE,                                                    PLAINTIFF,

VS.                                   **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

### INTRODUCTION

The plaintiff appeals from the negative administrative decision on his application for Child's Supplemental Security Income (SSI) benefits. The case is before the Court on cross-motions for summary judgment.

### LAW APPLICABLE TO CHILD'S SSI BENEFITS

As of 1996 <u>strict</u> standards for child's SSI claims were adopted. The Welfare Reform Act, P.L. No. 104-193, 110 Stat. 2105, provides that:

> An individual under the age of eighteen (18) shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months.

Thus, a child's SSI claim can be granted now only if there is a "marked and severe functional limitation(s)." The impairment must meet, medically equal, or functionally

1

equal in severity one of the Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 2. 20 C.F.R. Section 416.924.

The implementing regulations require the agency to determine if the child's impairment(s) meet any Listing of Impairments sections found at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. Section 416.924. If this step is not satisfied, the fact finder is required to consider limitation of specific functioning, broad areas of development or functioning, episodic impairments, and limitations related to medication effects to determine "functional equivalence" to the LOI. Section 416.926a. Functional equivalence is established if the child has one area of extreme functional limitations (i.e., very serious interference with functioning) or two areas of marked limitation (i.e., serious interference with functioning). Id.

## LAW APPLICABLE TO ADULT'S SSI BENEFITS

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

2

Eldridge

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.    If no, proceed to Step 7.    See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.    See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

3

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

4

Eldridge

First, we examine whether there is objective medical evidence of an
underlying medical condition. If there is, we then examine: (1)
whether objective medical evidence confirms the severity of the alleged
pain arising from the condition; or (2) whether the objectively
established medical condition is of such a severity that it can
reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.
1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment. The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.
1987). Further, a failure to seek treatment for a period of time may be a factor to be
considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

5

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

6

Eldridge

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

7

Eldridge

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) noted that Eldridge had filed an earlier claim for benefits, which had been denied in November, 1998 (Tr. 13); however, the standard applicable to evaluation of child's SSI benefits had been revised after the decision and, so, a new analysis had to be applied (Tr. 15). As also was noted by the ALJ, Eldridge's 18th birthday occurred on May 16, 2003; child's SSI standards apply before that date and adult SSI standards apply on that date and afterward. (Tr. 13)

The ALJ found that there was no current evidence for a "severe" impairment except for borderline intellectual functioning. For the period covered by the current child's SSI application, he believed that Eldridge had no limitations in any functional domain except for a "less than marked" limitation in acquiring new information (Tr. 17-18). Thus, the plaintiff was not entitled to benefits as a child. For the period covered by adult's benefits, the plaintiff had no past relevant work and was capable

8

Eldridge

of significant number of jobs identified by the vocational expert (VE) (Tr. 23) in response to hypothetical factors involving simple, non-detailed work where coworker and public contact was only casual and infrequent, supervision direct and non-confrontational, changes in the workplace infrequent and gradually introduced and which requirements were otherwise compatible with the job holder's having borderline intelligence (Tr. 54-55).

The plaintiff's mental condition was evaluated several times during the pertinent period.

Psychologist Michelle Amburgey saw the plaintiff in May, 2002 for a consultative examination. (Tr. 173). Eldridge, who was 17 years old, appeared oriented, was generally interactive, and showed no evidence of a thought disorder. (Tr. 174). The IQ scores and the WRAT results were not considered valid, due to malingering. (Tr. 175-176). The examiner, who had apparently seen the results of 1996 IQ testing, estimated the plaintiff's actual intelligence to fall in the "borderline" range. (Tr. 176). A GAF of 58 was reported (Id.), consistent with only moderate symptoms as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV).

Phil Pack and Stuart Cook signed a report based on an examination conducted June 27, 2002. (Tr. 178). A review was made of various medical

9

Eldridge

records, including one documenting a 1994 fall from a cliff. (Tr. 179). Several past

mental health evaluations were also available, including school-based IQ testing[1]

and the results of the recent Amburgey examination. (Tr. 180). The interview

portion of the examination was described as "going quite well." (Tr. 180-181). There

was a poor effort with formal testing (Tr. 181) and malingering was again diagnosed

(Tr. 183). Pending review of additional records and testing, his functional capacity

could not be fully accessed. (Tr. 183).

Phil Pack reexamined the plaintiff in mid-2003 when he was 18 years old. (Tr.

191). On the formal testing and interview, the plaintiff was said to have made "very

poor effort" and possible malingering was the only Axis I diagnosis. (Tr. 193-194).

Again, reliable functional limitations could not be assessed. (Tr. 195).

The only other remark from an examiner about Eldridge's mental status was

a one line remark from a consultative <u>physical</u> examiner suggesting that he had

"below normal mental capacity." (Tr. 197).

Various professional sources evaluated the plaintiff's mental capacity on

childhood benefit forms dealing with acquiring and using information, attending and

---

[1]1996 testing in Exhibit B10 F indicated that Eldridge had failing grades at the time (Tr. 227), was friendly and cooperative, and produced IQ scores in the high 60s and low 70s with good effort (Tr. 228-229). The administrative regulations specifically indicate that the IQ does not stabilize until age 16. 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 112.00. Thus, these early scores are not directly representaitive of the plaintiff's functioning years later. _____.

10

Eldridge

completing tasks, and interacting and relating with others but no such limitations were ever indicated (Tr. 202, 210, 218).

Remote records were introduced to document mental health treatment in 1996 and 1997 concerning post traumatic stress disorder regarding his fall from the cliff. (Tr. 262). In the last progress note, dated <u>years</u> before the current period, the plaintiff was said to be improving. (Tr. 249).

Given this evidence and, particularly the more current suggestion of malingering by examiners and assessments of the non-examiners, the mental restrictions were adequate, under either the child or adult's standards.

The plaintiff was evaluated several times recently concerning his physical status.[2] Dr. A. Dahhan indicated that his hearing and vision appeared normal. (Tr. 196). His skin was clear and heart and lungs sounds were unremarkable. (Tr. 197). No pathological reflexes, sensory changes or atrophied muscles were found. (<u>Id</u>.). The examiner himself mentioned no restrictions and the medical reviewer, who described the consultative examination as normal, also stated that there was no "severe" physical impairment (Tr. 200). Medical Reviewers C. Hernandez and

---

[2]Hughes Helms' report (e.g., Tr. 185) was not considered to be medical evidence as he was not licensed at the time (Tr. 184). Helm had indicated the physical examination was largely normal. (Tr. 188).

11

Eldridge

JoAnne Sexton concurred or stated that basic work activity was not precluded by the physical condition.  (Tr. 207, 208).

Remote treatment records deal with eczema (e.g., Tr. 276), now apparently resolved, and find no physical sequela of the fall as of the sixth grade (Tr. 264).

Thus, the physical condition was adequately assessed.

For these reasons, as well as those cited in the defendant's brief at pp. 6-8 regarding borderline intellectual ability and the Dictionary of Occupational Titles as well as the lack of questioning at the administrative hearing, the decision will be affirmed.

This the ___/ /___ day of January, 2006.

G. WIX UNTHANK
SENIOR JUDGE

12